FILED
Jan 28, 2026
01:07 PM(CT)
TENNESSEE
WORKERS' COMPENSATION
APPEALS BOARD



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD

| | |
|---|---|
| Wayne Freeman | Docket No. 2023-05-6340 |
| v. | State File No. 85832-2022 |
| United Road Services, Inc., et al. | |

Appeal from the Court of Workers'
Compensation Claims
Thomas L. Wyatt, Judge

---

### Affirmed and Certified as Final

---

The employee suffered a compensable left shoulder injury in 2022. Following a period of medical treatment with an authorized provider, the employee was released at maximum medical improvement and assigned a permanent medical impairment rating. In 2023, the parties entered into a court-approved settlement agreement resolving the employee's claim for an original award of permanent disability benefits and leaving open his entitlement to future medical benefits with his authorized provider. Thereafter, the employee continued to experience symptoms in his left shoulder and sought additional treatment from his authorized provider, who recommended surgery. In late 2024, the employee filed a petition asking the court to allow him to select a new authorized physician. Following a hearing, the trial court denied the employee's request, and the employee has appealed. Having carefully reviewed the record, we affirm the trial court's order and certify it as final.

Presiding Judge Timothy W. Conner delivered the opinion of the Appeals Board in which Judge Pele I. Godkin and Judge Meredith B. Weaver joined.

Wayne Freeman, employee-appellant, pro se

Heather H. Douglas and Jenna M. Macnair, Nashville, Tennessee, for the employer-appellee, United Road Services, Inc.

### Factual and Procedural Background

Wayne Freeman ("Employee") drove a vehicle hauler for United Road Services, Inc. ("Employer"). In 2022, Employee suffered a work-related injury to his left shoulder, which Employer accepted as compensable. Employee came under the care of Dr. Scott

Arthur, an orthopedic surgeon, who diagnosed a left shoulder SLAP tear with residual symptoms. Following a course of conservative treatment, Dr. Arthur placed Employee at maximum medical improvement ("MMI") in May 2023 and assigned a permanent medical impairment rating of 2%. Thereafter, the parties entered into a settlement agreement in 2023 that was approved by the trial court. This agreement resolved Employee's claim for an original award of permanent disability benefits and left open Employee's entitlement to future medical benefits for his left shoulder injury pursuant to Tennessee Code Annotated section 50-6-204. Specifically, the settlement agreement stated that Employer

> agrees to pay for reasonable and necessary[] future medical expenses for the work injury under Tennessee Code Annotated section 50-6-204. Dr. Scott Arthur is the authorized treating physician for future care (or a panel of physicians will be provided pursuant to Tenn. Code Ann. § 50-6-204).

Following the settlement, Employee continued to report left shoulder symptoms, and Dr. Arthur eventually performed surgery in April 2024. That treatment was authorized and paid for by Employer. After a period of recovery, Dr. Arthur released Employee to return to work in June 2024. Employee was then terminated in August 2024 after being involved in a motor vehicle accident that caused damage to Employer's vehicle.

In October 2024, Employee filed a petition for benefit determination seeking additional permanent disability benefits. In January 2025, Employee filed a hearing request in which he asked the court for additional permanent disability benefits based on an updated medical impairment rating. The specific benefits requested included "enhanced compensation due to the fact that I can no longer do the work that I did or earn the pay that I did at the time of injury," authorization for a functional capacity evaluation, additional mileage reimbursement, and "medical treatment from a different doctor."

For its part, Employer opposed Employee's requests for relief. First, it argued Employee cannot seek an updated impairment rating because the prior court-approved settlement agreement stipulated that his permanent medical impairment rating is 2% as assigned by the authorized treating physician. Second, it asserted Employee was not entitled to increased permanent disability benefits pursuant to Tennessee Code Annotated section 50-6-207(3)(B) because, at the expiration of his initial compensation period following MMI, Employee had returned to work for his pre-injury employer at an equal rate of pay, thereby disqualifying him for increased benefits. Third, Employer argued he was not entitled to the functional capacity evaluation previously recommended by Dr. Arthur because that request had been denied through the utilization review process and was not administratively appealed. Fourth, Employer denied it had received any documentation supporting a claim for additional mileage reimbursement. Finally, and most pertinent to the present appeal, Employer asserted Employee was not entitled to select a new treating physician because there was no evidence his current authorized physician, Dr. Arthur, had declined to treat him.

2

In a July 7, 2025 status order, the court advised Employee "to contact the Bureau's ombudsman program . . . for instruction about the narrow circumstances in which an employee can seek a change of authorized treating physician." On August 21, 2025, Employee forwarded an email to the court clerk, which was accepted and stamped "Filed," alleging that an insurance adjuster had "changed the doctor[] panel selection and that changed the whole outcome of the case." He further asserted after he had selected a provider from the initial panel, the adjuster "changed the panel by adding the doctor that was not even on the original panel because they knew he would give them the outcome they wanted." He described this as "foundational fraud" that "[s]hould invalidate the settlement." Finally, he argued that his "treatment should be revisited by a different doctor because . . . I am still not at MMI."

In support of these arguments, Employee included a copy of a Choice of Physician form, which he purportedly signed on January 5, 2023, indicating he had selected "Bone & Joint Clinic" as his authorized provider. The "Bone & Joint Clinic" listed on the panel included an address on Medical Center North in Nashville, which is apparently located at Vanderbilt Medical Center. Employee then provided another email dated September 25, 2025, that included a copy of an unsigned Choice of Physician form on which his previous selection of the "Bone & Joint Clinic" at Vanderbilt had been replaced with "Bone & Joint Institute" in Franklin, Tennessee.[1] His treating physician, Dr. Arthur, practices with the Bone and Joint Institute in Frankin.

In its pre-hearing brief, Employer did not address Employee's allegations regarding the Choice of Physician form or his selection of a treating physician, but it instead argued that "Employee has not provided any medical evidence challenging the reasonableness or appropriateness of Dr. Arthur's treatment." It further asserted that "Dr. Arthur has not declined to provide treatment," and Employee's "loss of confidence" in his treating physician does not legally support a request to compel a change in the authorized treating physician.

Following a hearing, the court issued a compensation order on October 14, 2025, denying Employee's petition for relief.[2] The court determined that, to the extent Employee was seeking relief from the court's 2023 judgment approving the settlement agreement, he did not file his petition timely as required by Rule 60.02 of the Tennessee Rules of Civil Procedure and did not come forward with sufficient evidence justifying relief under Rule 60.02(5) ("any other reason justifying relief from the operation of the judgment").

---

[1] Employee also provided a copy of an email purportedly sent to him on January 5, 2023, the day he signed and returned the original Choice of Physician form, in which the claim representative explained that the initial form "had the incorrect telephone and address on it for the Bone and Joint Institute." The claim representative then stated she was sending him an "updated panel (same clinic)."

[2] We have been provided no transcript pertinent to this appeal. According to the trial court's order, the only issue addressed during the compensation hearing was Employee's request for a change of physicians.

Employee has appealed. Upon careful review of the record in this case, we affirm the trial court's order and certify it as final.

## Standard of Review

The standard we apply in reviewing a trial court's decision presumes that the court's factual findings are correct unless the preponderance of the evidence is otherwise. *See* Tenn. Code Ann. § 50-6-239(c)(7) (2025). When the trial judge has had the opportunity to observe a witness's demeanor and to hear in-court testimony, we give considerable deference to credibility determinations made by the trial court. *Madden v. Holland Grp. of Tenn., Inc.*, 277 S.W.3d 896, 898 (Tenn. 2009). However, "when it comes to deposition testimony, an appellate panel is in the same position as the trial court to make credibility determinations." *Edwards v. Peoplease, LLC*, No. W2024-01034-SC-R3-WC, 2025 Tenn. LEXIS 514, at *18 (Tenn. Dec. 22, 2025). Thus, when medical proof is presented by deposition, "the reviewing court may draw its own conclusions about the weight and credibility of the expert testimony." *Id.* Further, the interpretation and application of statutes and regulations are questions of law that are reviewed *de novo* with no presumption of correctness afforded the trial court's conclusions. *See Mansell v. Bridgestone Firestone N. Am. Tire, LLC*, 417 S.W.3d 393, 399 (Tenn. 2013).

## Analysis

### *Motion to Strike*

We first address a motion to strike filed by Employer. After the filing of the notice of appeal, and after the appellate record was transmitted to the Clerk of the Appeals Board, Employee filed a medical record apparently concerning his visit with Dr. Arthur on July 25, 2025. There is no indication this medical record was included in any exhibit introduced as evidence during the compensation hearing. There is no indication that the trial court had this record available for its consideration prior to issuing its compensation order. It is well-settled that, on appeal, we cannot consider any document that was not properly admitted into evidence and considered by the trial court. Tenn. Comp. R. & Regs. 0800-02-22-.02(2) (2023) ("Documents, testimony, or other evidence not contained in the record on appeal shall not be considered by the appeals board."). *See also Hadzic v. Averitt Express*, No. 2014-02-0064, 2015 TN Wrk. Comp. App. Bd. LEXIS 14, at *13 n.4 (Tenn. Workers' Comp. App. Bd. May 18, 2015) ("[W]e will not consider on appeal testimony, exhibits, or other materials that were not properly admitted into evidence at the hearing before the trial judge."). Thus, Employer's motion to strike is granted.

### *Post-Judgment Relief*

Next, we address the trial court's determination that Employee's attempt to seek post-judgment relief came too late. It is unrefuted that, in September 2023, the parties

4

entered into a settlement agreement regarding Employee's November 2022 left shoulder injury. The agreement reflected Employer's willingness to pay an original award of permanent disability benefits based on the impairment rating assigned by the authorized treating physician, Dr. Scott Arthur. The agreement further reflected that Dr. Arthur would remain Employee's authorized physician for future care unless circumstances arose that required Employer to provide a new panel of physicians in accordance with Tennessee Code Annotated section 50-6-204. That agreement was duly approved and incorporated into a judgment of the court entered on September 22, 2023.

Employee's current petition was filed October 29, 2024, more than one year after the court's judgment was entered. At the time the settlement agreement was approved and incorporated into the judgment of the court, Employee did not challenge the identification of Dr. Arthur as his authorized treating physician or assert that Employer or its insurer had engaged in fraud to somehow coerce him into selecting Dr. Arthur.

Rule 60.02 of the Tennessee Rules of Civil Procedure describes circumstances in which a party may seek relief from a judgment due to mistakes, inadvertence, excusable neglect, or fraud. With respect to a petition for relief based on: "(1) mistake, inadvertence, surprise, or excusable neglect"; or "(2) fraud . . . , misrepresentation, or other misconduct of an adverse party," the petition seeking relief must be filed "not more than one year after the judgment, order, or proceeding was entered or taken." Tenn. R. Civ. P. 60.02.

Here, Employee alleges "foundational fraud" when the original Choice of Physician form was presented to him, his selection was made, and then the form was amended to reflect a new office location for the provider he had selected. Yet, Employee did not object to his physician selection at the time the Choice of Physician forms were provided and amended, and he accepted the treatment provided by Dr. Arthur. Moreover, Employee had access to the same information regarding the original and amended Choice of Physician forms when he entered into the settlement agreement identifying Dr. Arthur as his authorized treating physician, but there is no evidence in this record indicating that he expressed any concerns and/or objections to the trial court when the settlement agreement was presented for approval. Finally, Employee did not file his current petition until more than one year after the court's judgment was entered. Thus, to the extent Employee's petition seeks to set aside or alter the September 2023 judgment of the court, we agree Employee's petition is not timely.

*Request for Change of Authorized Treating Physician*

However, our conclusion as noted above does not end the inquiry. An injured employee whose entitlement to future medical care is reflected in a court judgment can file a petition asking the court to resolve a dispute over future medical care without regard to Rule 60 of the Tennessee Rules of Civil Procedure. Tennessee Code Annotated section 50-6-204(g)(2)(A) authorizes an employee to file a petition for benefit determination and

participate in alternative dispute resolution if the employee alleges the employer is failing to provide medical benefits "as a result of a judgment or decree entered by a workers' compensation judge . . . or as a result of a workers' compensation settlement agreement." Tenn. Code Ann. § 50-6-204(g)(2)(A). Moreover, "[t]he authority of a workers' compensation judge to order the provision of benefits under this section shall include [the] authority to order specific medical care or treatment, medical services or medical benefits, or both for all settlements . . . ." Tenn. Code Ann. § 50-6-204(g)(2)(B). Thus, at any point in time during which an employee is entitled to medical care pursuant to a judgment or court-approved settlement, the Court of Workers' Compensation Claims has the authority to entertain a petition to resolve a dispute regarding future medical care regardless of the limitations set out in Tennessee Rule of Civil Procedure 60.02.

Here, Employee claims not only that Employer or its insurer engaged in fraud during the physician selection process but also that Dr. Arthur prematurely placed him at MMI and has failed or refused to provide reasonable and necessary medical treatment for his injury. However, Employee has not, to date, offered any evidence supporting those assertions. Mere allegations are not evidence. *See Kenney v. HSN, Inc.*, No. 2020-02-0536, 2024 TN Wrk. Comp. App. Bd. LEXIS 1, at *5-6 (Tenn. Workers' Comp. App. Bd. Jan. 5, 2024). The record contains no evidence that Dr. Arthur has refused or failed to provide reasonable and necessary medical care causally related to Employee's work-related injury.

Further, Employee has provided no transcript of the expedited hearing and no brief on appeal. "Without a transcript or a statement of the evidence, the appellate court cannot know what evidence was presented to the trial court, and there is no means by which we can evaluate the appellant's assertion that the evidence did not support the trial court's decision." *Britt v. Chambers*, No. W2006-00061-COA-R3-CV, 2007 Tenn. App. LEXIS 38, at *8 (Tenn. Ct. App. Jan. 25, 2007). When an appellant fails to offer substantive arguments on appeal, an appellate court's "ability to conduct meaningful appellate review is significantly hampered." *Holmes v. Ellis Watkins d/b/a Watkins Lawn Care*, No. 2017-08-0504, 2018 TN Wrk. Comp. App. Bd. LEXIS 7, at *3-4 (Tenn. Workers' Comp. App. Bd. Feb. 13, 2018). It is not our role to search the record for possible errors or to formulate a party's legal arguments where that party has provided no meaningful argument or authority to support its position. *Cosey v. Jarden Corp.*, No. 2017-01-0053, 2019 TN Wrk. Comp. App. Bd. LEXIS 3, at *8 (Tenn. Workers' Comp. App. Bd. Jan. 15, 2019). Thus, we conclude Employee has, to date, offered no evidence to support a finding that Employer has failed or refused to provide medical benefits to which Employee is entitled pursuant to the terms of the settlement agreement or any applicable statutory provision.

## Conclusion

For the foregoing reasons, we affirm the trial court's order and certify it as final. Costs on appeal are taxed to Employee.